UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/26/12

------------------------------------------------ X

In re MADISON BENTLEY
ASSOCIATES, LLC,

                    Debtor.

: <u>OPINION AND ORDER</u>
:
:
: **Chapter 11 Case No.**
: **09-15479 (SHL)**

------------------------------------------------ X

GREGORY MESSER, as Trustee of the
Madison Bentley Associates, LLC
Litigation Trust,

                    Plaintiff,

       - against -

BENTLEY MANHATTAN INC.,
MANHATTAN MOTORCARS INC., and:
BRIAN MILLER,

                  Defendants.

**11 Civ. 9027 (SAS)**
**Adv. Pro. No. 10-03487**

------------------------------------------------ X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

      This motion is brought in connection with an adversary proceeding

filed by the Madison Bentley Associates, LLC Litigation Trust ("plaintiff") against

Bentley Manhattan Inc., Manhattan Motorcars Inc., and Brian Miller (collectively,

"defendants"). Defendants move to withdraw the reference to the Bankruptcy

Court, pursuant to section 157(d) of Title 28 of the United States Code. Defendants

-1-

contend that under the Supreme Court's recent decision in *Stern v. Marshall*, an Article III court must adjudicate these actions.[1]  For the reasons set forth below, defendants' motion to withdraw the reference is denied.

## II.   BACKGROUND

In March 2000, MMC Madison LLC entered into an agreement with Madison Avenue Leasehold, LLC to lease a portion of 437 Madison Avenue, New York, New York for a period of ten years.[2]  In July of that year, MMC Madison LLC assigned all of its rights, title and interest in the lease to the Debtor, Madison Bentley Associates, LLC for ten dollars in consideration.[3]  The Debtor was a company "with no assets or employees . . . formed . . . for the sole purpose of being assigned the [l]ease."[4]  Plaintiff contends that Debtor transferred its sole valuable asset – the right under the lease to operate a car dealership on the premises – to

---

[1]     *Stern v. Marshall*, 564 U.S. —, 131 S. Ct. 2594 (2011).

[2]     *See* Lease Agreement, Ex. A to Defendants' Memorandum of Law in Support of Motion to Withdraw the Reference to the Bankruptcy Court ("Def. Mem.").

[3]     *See* Assignment Agreement, Ex. C to Def. Mem.

[4]     Affidavit of Brian Miller in Support of Defendants' Motion to Stay All Proceedings, or in the Alternative, for Summary Judgment, Ex. P to Def. Mem. ¶ 19.

defendant Bentley Manhattan Inc. for no consideration.[5]  By way of introduction, the other defendants are Manhattan Motorcars Inc., which plaintiff alleges conducts Bentley Manhattan Inc.'s business operations, and Brian Miller, who owns both corporate defendants, as well as the Debtor.[6]

The Debtor vacated the premises in September 2003, a little over three years after the lease commenced.[7]  This prompted Madison Avenue Leasehold, LLC to bring suit in New York State Supreme Court against the Debtor for alleged defaults under the lease and for damages in the amount of the rent due for the remainder of the lease period.[8]  Madison Avenue Leasehold, LLC won the suit and in June 2009 was awarded over one million dollars.[9]

In September 2009, Debtor filed a petition for bankruptcy under Chapter 7 of Title 11, listing Madison Avenue Leasehold, LLC as sole creditor.[10]  In

---

[5]      *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Withdraw the Reference to the Bankruptcy Court ("Opp. Mem.") at 3.

[6]      *See* Complaint, Ex. E to Def. Mem. ¶¶ 21-22.

[7]      *See id.* ¶ 13.

[8]      *See Madison Ave. Leasehold, LLC v. Madison Bentley Assoc., LLC*, No. 0600192/2004, 2005 WL 5643823 (Sup. Ct. N.Y. Co. Jan. 4, 2005), *aff'd*, 811 N.Y.S.2d 47 (1st Dep't 2006), *aff'd*, 8 N.Y.3d 59 (2006).

[9]      *See* Referee's Decision, Order and Judgment, Ex. F to Def. Mem.

[10]      *See* Voluntary Petition, Ex. G to Def. Mem.

August 2010, the Trustee, Gregory Messer, commenced the Adversary Proceeding against defendants.  Messer's complaint alleged one claim of alter ego liability pursuant to sections 541 and 542(a) of Title 11 and two claims of fraudulent conveyance pursuant to section 544(b)(1).[11]  After extensive discovery, the parties filed, inter alia, competing motions for summary judgment on which oral arguments were scheduled for May 31, 2012.[12]

## III.   LEGAL STANDARD

### A.   Permissive Withdrawal from Bankruptcy Court

Under section 157(d) of Title 28, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."[13]  In *In re Orion Pictures Corporation*, the Second Circuit held that whether cause has been shown depends on a number of factors.[14]  These include "whether the claim or proceeding is core or non-core . . . considerations of efficiency, prevention of forum shopping,

---

[11]     *See* Complaint ¶¶ 23-31.

[12]     *See* Bankruptcy Court Docket Sheet, Ex. A to Opp. Mem.; Notice of Re-Scheduling of (i) Pl.'s Mot. for Summ. J. and (ii) Defs.' Mot. for a Stay or, in the Alternative, Summ. J., Apr. 2, 2012, Docket No. 57.

[13]     28 U.S.C. § 157(d) (2005).

[14]     *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

and uniformity in the administration of bankruptcy law."[15]  In the past, whether the claim was core was the predominant factor.[16]

**B.**     ***Stern v. Marshall***

**1.**     **The Decision and Its Interpretation**

*Stern* threw the *Orion* framework into question when the Supreme Court held that the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim," despite finding that the tortious interference counterclaim at issue was "core" pursuant to section 157(b)(2)(C).[17]  In coming to that conclusion, the *Stern* Court relied on its ruling in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, which held that "there was a category of cases involving 'public rights' that Congress could constitutionally assign to 'legislative' courts for resolution," but that Article III does not allow bankruptcy courts to enter final judgments on matters of purely private rights.[18]  "What matters for Article III purposes – and so the question that must be asked in any challenge to

---

[15]     *Id.*

[16]     *See id.*

[17]     *Stern*, 131 S. Ct. at 2620.

[18]     *Id.* at 2610 (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 51 (1982)).

the Bankruptcy Court's authority to make final adjudications – is whether the claim to be adjudicated involves a 'public' or a 'private' right."[19]

Broadly speaking, public rights are:  "(1) rights created by federal law, to which the political branches are free to attach conditions; (2) claims tied up inextricably with such rights; or (3) 'matters that historically could have been determined exclusively by the Executive and Legislative Branches.'"[20] Indeed, in *Stern*, the Court noted that it

> has continued . . . to limit the exception to cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority . . . . [W]hat makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action.[21]

However, as the concurrence in *Stern* pointed out, the Court rested its decision on a number of other factors beyond the private nature of the counterclaim including the fact that the defendant had not truly consented to bankruptcy court adjudication and that the proof of claim would not necessarily

---

[19]      *Retired Partners of Coudert Bros. Trust v. Baker & McKenzie* (*In re Coudert Bros. LLP*), No. 11 Civ. 2785, 2011 WL 5593147, at *7 (S.D.N.Y. Sept. 23, 2011).

[20]      *Id.* at *4 (quoting *Stern*, 131 S. Ct. at 2611-13).

[21]      *Stern*, 131 S. Ct. at 2598.

resolve the counterclaim.[22]

> *Stern* has engendered much debate about what its ruling means for the other proceedings statutorily designated as "core" in section 157.  Despite adopting sweeping language, the *Stern* Court itself stressed the narrowness of its ruling.[23] The Second Circuit has also endorsed a narrow reading of *Stern*, but resisted delineating the reach of that case's holding.[24]  Other circuits and lower courts have adopted a similar posture:  "[r]ecognizing that the Court in *Stern* stated its holding was 'narrow,' courts have limited *Stern*'s holding to only those 'core' claims that

---

[22]        *Id.* at 2621.

[23]        *Compare id.* at 2620 ("We conclude today that Congress, in one isolated respect, exceeded [Article III's] limitation in the Bankruptcy Act of 1984."), *with id.* at 2598 ("This case involves the most prototypical exercise of judicial power:  the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime.").

[24]        *See Pfizer Inc. v. Law Offices of Peter G. Angelos* (*In re Quigley Co.*), 676 F.3d 45, 53 (2d Cir. 2012) (focusing on the factual disparity between *Stern*'s tortious interference counterclaim and the injunction for a stay of litigation at bar, and holding that "[w]hatever *Stern*'s precise contours (a matter we need not reach) . . . *Stern* has no application to the present case"); *Ace Am. Ins. Co. v. DPH Holdings Corp.* (*In re DPH Holdings Corp.*), 448 Fed. App'x 134, 136 (2d Cir. 2011) (holding that worker's compensation claims, even years after a plan confirmation, fall within the authority of the bankruptcy court to enter final judgment).

involve the 'unique set of facts' found in *Stern*."[25]

As it stands today, the *Stern* test has been characterized as follows:

> After *Stern*, a court's consideration of a motion to withdraw reference to bankruptcy court should – in addition to the *Orion* factors – include consideration of:  whether the claims at issue involve a public or private right; whether the claims will be resolved in ruling on a creditor's proof of claim, if any; and whether the parties consent to final adjudication by a non-Article III tribunal.[26]

Nonetheless, "the core/non-core distinction is still a relevant consideration."[27]

## 2.    Fraudulent Conveyance Claims

In *Stern,* the Court analogized a tortious interference counterclaim to a fraudulent conveyance claim.  The counterclaim, the Court asserted, "like the fraudulent conveyance claim at issue in *Granfinanciera* [*v. Nordberg*] . . . does not fall within any of the varied formulations of the public rights exception in this

---

[25]    *Adelphia Recovery Trust v. FLP Grp., Inc.*, No. 11 Civ. 6847, 2012 WL 264180, at *2 (S.D.N.Y. Jan. 30, 2012).  *Accord DiVittorio v. HSBC Bank USA, N.A.* (*In re DiVittorio*), 670 F.3d 273, 282 n.4 (1st Cir. 2012) (highlighting the "in one isolated respect" passage from *Stern*).

[26]    *Adelphia*, 2012 WL 264180, at *3 (citing *Walker, Truesdell, Roth & Assoc. v. Blackstone Grp., L.P.* (*In re Extended Stay, Inc.*), 466 B.R. 188, 199 (S.D.N.Y. 2011)).  *Accord Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP* (*DSI*), 462 B.R. 457, 472 (S.D.N.Y. 2011).

[27]    *In re Extended Stay*, 466 B.R. at 204 ("As an initial matter, there is nothing in *Stern* to suggest that the statutory distinction between core claims and non-core claims is an inappropriate consideration.")

Court's cases."[28]  Indeed, "fraudulent conveyance suits were 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate . . . .'"[29]  As such, "Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court."[30]

The Second Circuit has not tackled a fraudulent conveyance withdrawal of reference claim since *Stern.*[31]  Because the discussion of fraudulent conveyance in *Stern* is found only in dicta, many bankruptcy courts have declined to follow it.[32]  But most courts in this district have held that because a fraudulent

---

[28]     *Stern*, 131 S. Ct. at 2614 (citing *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33 (1989)).

[29]     *Id.* (quoting *Granfinanciera*, 492 U.S. at 35).

[30]     *Id.* at 2614 n.7.

[31]     *But see Executive Benefits Ins. Agency v. Arkison* (*In re Bellingham Ins. Agency*), 661 F.3d 476, 476-77 (9th Cir. 2011) (requesting supplemental briefs addressing whether *Stern* "prohibit[s] bankruptcy courts from entering a final, binding judgment on an action to avoid a fraudulent conveyance").

[32]     *See Heller Ehrman LLP v. Arnold & Porter, LLP* (*In re Heller Ehrman*), No. 08 B. 32514, 2011 WL 4542512, at *7 (Bankr. N.D. Cal. Sept. 28, 2011) ("[T]he Supreme Court did not hold in *Stern* that bankruptcy judges lack authority to render final judgments on fraudulent transfer claims."), *recommendation adopted*, 464 B.R. 348 (N.D. Cal. 2011); *In re Salander O'Reilly Galleries*, 453 B.R. 106, 117 (Bankr. S.D.N.Y. 2011).

conveyance claim is "precisely the kind of claim found to involve only private rights in *Granfinanciera*," a bankruptcy judge may not enter a final judgment as to such claims brought against persons who have not submitted a claim against the estate and brought solely to augment that estate.[33]

### 3.     Alter Ego Liability Claims

*Stern* did not specifically address alter ego liability claims, nor has the Second Circuit tackled *Stern*'s application to these claims.  Neither party cites a case decided since *Stern* that deals specifically with an alter ego liability claim.[34] Indeed, this Court finds no useful guidance in this Circuit – or elsewhere – as to

---

[33]     *DSI*, 462 B.R. at 469.  *Accord Adelphia*, 2012 WL 264180, at *4 ("These Supreme Court precedents demonstrate that a fraudulent transfer claim involves a private right."); *Weisfelner v. Blavatnik* (*In re Lyondell Chem. Co.*), 467 B.R. 712, 720 (S.D.N.Y. 2012) ("Under both *Stern* and *Granfinanciera . . .* it is axiomatic that a fraudulent conveyance claim against a person who has not submitted a claim against a bankruptcy estate, brought solely to augment the bankruptcy estate, is a matter of private right."); *Kirschner v. Agoglia* (*In re Refco, Inc.*), No. 11 Civ. 8250, 2012 WL 1622496, at *3 (S.D.N.Y. May 9, 2012) ("To now conclude that the very claim presented in *Granfinanciera* – a fraudulent conveyance claim – is a 'public rights' claim would be totally at odds with the *Stern* Court's analogy to *Granfinanciera*."); *In re Coudert Bros.*, 2011 WL 5593147, at *8-9; *In re Heller Ehrman*, 464 B.R. at 354.  *But see Madoff v. Picard* (*In re Madoff*), Nos. 10 Civ. 4652, 10 Civ. 7101, 10 Civ. 7219, 11 Civ. 1298, 11 Civ. 1328, 2012 WL 990829, at *12 n.5 (S.D.N.Y. Mar. 26, 2012) (declining, in a footnote, to extend *Stern* to fraudulent conveyance claims).

[34]     *See* Def. Mem. at 12-15; Opp. Mem. at 19-20; Defendants' Memorandum of Law in Further Support of Their Motion to Withdraw the Reference to the Bankruptcy Court and in Reply to Opposition Submitted by Plaintiff ("Reply Mem.") at 1-6.

withdrawing alter ego liability claims.

### 4.    Consent

Pursuant to section 157(c)(2) of Title 28, a bankruptcy court may finally adjudicate even non-core claims with the parties' consent.  This exception endures under *Stern*:  "[e]ven when private rights are at issue, non-Article III adjudication may be appropriate when both parties consent."[35]

The test for consent is strict, however.  Mere implied consent "appears to be insufficient."[36]  Moreover, "a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge."[37]  For instance, "[t]here is no implied consent where . . . defendants seek withdrawal at the close of discovery before any trial activities or judgment, and where new precedent renders unclear the authority of the bankruptcy [court] to enter final judgment on certain claims."[38]  In holding that defendants had not consented, the court in *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP* ("*DSI*") noted that "[t]he case is distinguishable from those

---

[35]    *Stern*, 131 S. Ct. at 2628.

[36]    *In re Lyondell*, 467 B.R. at 722 (citing to Fed. R. Bankr. P. 7012(b)).

[37]    *Men's Sportswear, Inc. v. Sasson Jeans, Inc.* (*In re Men's Sportswear, Inc.*), 834 F.2d 1134, 1138 (2d Cir. 1987).

[38]    *In re Lyondell*, 467 B.R. at 722.

cases where significant proceedings have already taken place," for instance where "a party sought withdrawal only after losing at trial."[39]

If a withdrawal motion is untimely, a party may be deemed to have consented to the court's jurisdiction.[40] Courts in this circuit "have defined 'timely' to mean as soon as possible after the moving party has notice of the grounds for withdrawing the reference."[41] But most motions found untimely pre-*Stern* involved significant delays.[42] Moreover, this Court has previously asserted that "whether the issue is 'timeliness' or consent . . . a waiver of important rights should only be found where it is fully knowing."[43]

### C.   Authority to Issue a Report and Recommendation

Defendants mistakenly assert that, after *Stern*, a bankruptcy court that

---

[39]   *DSI*, 462 B.R. at 472.

[40]   *See* 28 U.S.C. § 157(d).

[41]   *The Official Comm. of Unsecured Creditors of the VWE Grp., Inc. v. Amlicke* (*In re VWE*), 359 B.R. 441, 446 (S.D.N.Y. 2007) (quotation marks omitted).

[42]   *See Drew v. WorldCom, Inc.* (*In re WorldCom, Inc.*), No. 06 Civ. 3407, 2006 WL 2129309, at *2 (S.D.N.Y. July 26, 2006) (motion was untimely when made over eighteen months after debtor's objection to proof of claim); *In re FMI Forwarding Co.*, Nos. 00 B. 41815, 01 Civ. 9462, 01 Civ. 2992, 2004 WL 1348956, at *6 (S.D.N.Y. June 16, 2004) (motion was untimely when made eighteen months after movant became aware of grounds for the motion).

[43]   *DSI*, 462 B.R. at 472.

lacks final adjudicatory authority is now also barred from issuing a report and recommendation.[44]  To the contrary,

> [b]y granting bankruptcy courts authority to issue recommended findings in all non-core matters related to a bankruptcy proceeding, Congress intended such authority to reach all bankruptcy-related claims that bankruptcy courts cannot finally adjudicate under Article III.  The fact that Congress failed in its constitutional line-drawing does not require invalidation of this broader statutory purpose.[45]

Such an interpretation of *Stern* is consistent with the Court's own admonition that its decision would not "meaningfully chang[e] the division of labor in the current statute."[46]  The authority of a bankruptcy court  to issue recommendations on findings of facts and conclusions of law survives *Stern*.

### D.   The Remainder of the *Orion* Withdrawal Analysis After *Stern*

Prior to *Stern*, in evaluating whether cause for withdrawal was shown, a court considered additional factors beyond whether a claim was core:  (1)

---

[44]     *See* Def. Mem. at 15.

[45]     *In re Lyondell*, 467 B.R. at 724-25.  *Accord In re Refco, Inc.*, 2012 WL 1622496, at *1 (holding that while the court lacks final adjudicatory authority, "[n]onetheless, the Bankruptcy Court does have lawful authority to conduct proceedings and issue a report and recommendation to the District Court"); *Adelphia*, 2012 WL 264180; *In re Coudert Bros.*, 2011 WL 5593147.  *But see Ortiz v. Aurora Health Care, Inc.*, 665 F.3d 906, 915 (7th Cir. 2011) (deciding, in a holding disagreed with by most courts, that in the absence of final adjudicatory authority, the bankruptcy court ruling could not be treated as a report and recommendation in a core case).

[46]     *Stern*, 131 S. Ct. at 2620.

considerations of efficiency, (2) uniformity in the administration of bankruptcy law, (3) requests for a jury trial, and (4) the prevention of forum shopping.[47]  These factors remain integral to the withdrawal analysis post-*Stern*.[48]  The Second Circuit has provided no guidance on how *Stern* affects the balance of the analysis.[49]

In *In re Lyondell*, the court held that even when the bankruptcy court lacks final adjudicatory authority, withdrawal would be inefficient since the district court would benefit from the bankruptcy court's expertise and its knowledge of the evidence.[50]  The court did not reach the factors of forum-shopping and uniform application of bankruptcy law, finding that the inefficiency of withdrawal took precedence.[51]  Other cases in this district have agreed with *In re Lyondell* in finding that the remaining *Orion* factors weigh against withdrawal.[52]

One exception is *DSI,* in which the court held that in matters of private

---

[47]     *See In re Orion*, 4 F.3d at 1101.

[48]     *See In re Refco*, 2012 WL 1622496, at *6; *In re Extended Stay*, 466 B.R. at 197.

[49]     *See In re Quigley Co.*, 676 F.3d 45; *In re DPH Holdings Corp.*, 448 Fed. App'x 134.

[50]     *See In re Lyondell*, 467 B.R. at 723-25.

[51]     *See id.* at 725-26.

[52]     *See, e.g.*, *In re Extended Stay*, 466 B.R. at 205-07; *In re Refco*, 2012 WL 1622496, at *6.

rights, the other *Orion* factors tend to favor withdrawal.[53]  The court reasoned that,

because any decision by the bankruptcy court would be reviewed de novo,

withdrawal would be efficient and would not promote forum-shopping.[54]  However,

that case was unique since at least one defendant had requested a jury trial, which

requires withdrawal under section 175(e) of Title 28.[55]  It would have been

inefficient to split the claims given the similar facts and legal issues.[56]  Moreover,

discovery had not yet occurred, no management plan existed, and only legal issues

had been presented to the bankruptcy court.[57]  As such, that court was no more

familiar with the facts than a district court might be.  In addition, in that case, the

uniform administration of bankruptcy law would not be affected since only state

law was implicated.[58]  The only other case, cited by defendants, simply goes against

---

[53]     *See DSI*, 462 B.R. at 472-73.

[54]     *See id.* at 467.

[55]     *See id.* at 472.

[56]     *See id.*

[57]     *See id; see also Wedtech Corp. v. Banco Popular de P.R.* (*In re Wedtech Corp.*), 94 B.R. 293, 297 (S.D.N.Y.1988) (refusing to withdraw the reference at the pre-trial stage where the bankruptcy judge was familiar with the action; to do so "would defy logic, and be a gratuitous and unnecessary waste of judicial resources," whereas leaving the reference undisturbed presented a "unique and compelling opportunity to promote judicial economy and swift resolution, to the benefit of both parties").

[58]     *See DSI*, 462 B.R. at 472-73.

the weight of authority in this district.[59]

## IV.   DISCUSSION

As an initial matter, the claims at issue here are "core" under the meaning of section 157 of Title 28.  Defendants concede as much.[60]  The alter ego claim at bar is also core, a point defendants do not contest.[61]  Though the core/non-core distinction remains a starting point, after *Stern* it no longer ends the analysis.

### A.   The Bankruptcy Court's Authority to Enter a Final Judgment in this Action

#### 1.   The Bankruptcy Court Lacks Final Adjudicatory Authority over the Fraudulent Conveyance Claims

Courts in this district have consistently held that, after *Stern*, bankruptcy courts lack authority to issue final judgments on fraudulent conveyance claims brought against a person who has not submitted a claim against the estate. That is the case here.  Moreover, just as in *Stern*, the claims were brought solely to augment the bankrupt estate.

---

[59]     *See* Reply Mem. at 7 (citing *Geron v. Levine* (*In re Levine*), No. 11 Civ. 9101, 2012 WL 310944, at *3-4 (S.D.N.Y. Feb. 1, 2012)).

[60]     *See* Def. Mem. at 10 (citing 28 U.S.C. § 157(b)(2)(H)).

[61]     *See Central Vermont Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 192 (2d Cir. 2003) ("[W]e have ruled that the trustee is the proper person to assert claims . . . against the debtor's alter ego or others who have misused the debtor's property in some fashion, and by extension, we have held that such alter ego claims are core proceedings." (quotation marks omitted)).

While plaintiff contends that *DSI* is inapposite to this case because this fraudulent conveyance involved a "sham" entity instead of "separate and distinct entities,"[62] plaintiff provides no legal justification for why that fact has a material effect on the court's adjudicatory authority. Moreover, plaintiff's attempt to distinguish cases on this basis is circular as it conflates fraudulent conveyance with alter ego liability. Finally, whether entities are alter egos of each other is an issue for the court – not the plaintiff – to decide.[63]

I therefore conclude that the Bankruptcy Court lacks the authority to finally adjudicate the fraudulent conveyance claims. However, nothing in this holding precludes the Bankruptcy Court from issuing a report and recommendation.

### 2. The Bankruptcy Court Also Lacks Final Adjudicatory Authority over the Alter Ego Liability Claim

Defendants contend that plaintiff's complaint consists of disguised breach of contract claims – quintessentially common law claims.[64] That argument is specious because it does not appear that any party is seeking adjudication of the contract.[65]

---

[62]     Opp. Mem. at 18.

[63]     *See* Reply Mem. at 4.

[64]     *See* Def. Mem. at 13-14.

[65]     Contrary to defendants' argument, the fact that there is only one creditor is immaterial. Defendants cite no authority, nor make a convincing case,

The parties do not opine on whether the claim will be resolved in ruling on the sole creditor's proof of claim.  While it does not appear that Madison Avenue Leasehold, LLC has yet filed a proof of claim, there is no reason to believe that the alter ego liability claim would need to be resolved if and when it does so.

Regardless, in this particular case, the alter ego liability claim is entirely derivative of the fraudulent conveyance claims.  As defendants point out, plaintiff's request for relief is necessarily dependent on and subsumed by those claims. In this context, I conclude that the Bankruptcy Court lacks final adjudicatory authority over the alter ego claim.  Because that claim was brought against a person who has not submitted a claim against the estate – but rather solely to augment that estate – this determination comports with the holding and spirit of *Stern*.

### 3.   Defendants Did Not Consent to Bankruptcy Court Adjudication

Plaintiff contends that defendants have litigated the Adversary Proceeding for over a year and a half, and waited eight months after *Stern* to file this motion.[66]  However, just as in *In re Lyondell*, defendants seek withdrawal at the

---

for the contention that because there is but one creditor, this is a private dispute. This would render all single-creditor adversary proceedings private disputes.

[66]      *See* Opp. Mem. at 8.

close of discovery before trial or judgment on the merits.[67]  Defendants are correct

that the cases in this district that have denied withdrawal motions as untimely

involved significantly longer delays and were made "after . . . findings adverse to

the moving party."[68]  Plaintiff cites no contrary authority.[69]  Moreover, as

defendants point out, their motion was filed a month after the first post-*Stern* case in

this district granted a motion to withdraw, and their only participation in the

Adversary Proceeding since *Stern* has been to take one deposition and participate in

a conference as directed by court order.[70]  In sum, this course of conduct does not

warrant the waiver of important rights given the emergence of important new

precedent – much less the sanctions requested by plaintiff.[71]

### B.   The Remainder of the *Orion* Analysis Does Not Favor Withdrawing the Reference

The balance of the *Orion* factors also warrants retention of the case by

the Bankruptcy Court.  *First*, defendants contend that withdrawing the reference

would promote judicial economy as the Bankruptcy Court's report and

---

[67]   *See* Bankruptcy Court Docket Sheet.

[68]   *In re VWE*, 359 B.R. at 447; *see* Reply Mem. at 9.

[69]   *See* Opp. Mem. at 20-22.

[70]   *See* Def. Mem. at 9-10.

[71]   *See* Opp. Mem. at 22.

recommendation must be reviewed de novo by this Court.[72]   However, discovery is

now complete and a motion for summary judgment is pending.[73]  As plaintiff

argues, that court is familiar with the facts of the case and has issued rulings.[74]  It is

more efficient to allow the Bankruptcy Court to provide recommendations on

findings of facts and conclusions of law than for this Court to begin anew.  *Second*,

defendants argue that withdrawal of the reference will not interfere with the uniform

administration of bankruptcy law because these supposedly disguised contract

claims are based on state common law.[75]  As discussed above, this argument fails.

Moreover, the fact that final adjudication by a district court would not interfere with

the uniform administration of bankruptcy law is no reason *for* withdrawal.  *Third*,

neither party has requested a jury trial.[76]  *Fourth*, defendants insist that they are not

attempting to forum-shop.[77]  Taking this statement at face value, the balance of

factors still weighs overwhelmingly against withdrawal.

      In spite of the Bankruptcy Court's lack of constitutional authority to

---

[72]   *See* Def. Mem. at 18-19.

[73]   *See* Bankruptcy Court Docket Sheet.

[74]   *See* Opp. Mem. at 24.

[75]   *See* Def. Mem. at 19.

[76]   *See* Bankruptcy Court Docket Sheet.

[77]   *See* Def. Mem. at 19.

enter a final judgment on the claims at bar, the *Orion* factors support the determination that the Bankruptcy Court continue proceedings and submit a report and recommendation to this Court.

## V.      CONCLUSION

For the foregoing reasons, defendants' motion is denied.  The Clerk of the Court is directed to close this motion [docket # 1] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 26, 2012

-21-

**- Appearances -**

**For Plaintiff:**

Abner T. Zelman, Esq.
Kucker & Bruh, LLP
 747 Third Avenue
New York, New York 10017
(212) 869-5030

**For Defendants:**

Jerome Reisman, Esq.
Marc Sackin, Esq.
Reisman Peirez Reisman & Capobianco LLP
1305 Franklin Avenue
PO Box 119
Garden City, New York 11530
(516) 746-7799